# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**TONYA LOOMIS**                                                      **PLAINTIFF**

**V.**                                              **NO. 1:14-CV-00159-DMB-DAS**

**STARKVILLE MISSISSIPPI PUBLIC**
**SCHOOL DISTRICT**                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This employment discrimination case is brought by Tonya Loomis against her current employer, Starkville Mississippi Public School District. Doc. #1. Before the Court is the District's motion for summary judgment. Doc. #29. For the reasons that follow, summary judgment is granted in part and denied in part.

## I
## Summary Judgment Standard

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 22–23 (1986)). To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Norwegian Bulk Transp. A/S*, 520 F.3d at 411–12 (internal quotation marks and citation omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

"If … the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar

evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (citation and internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II
## Factual Background

### A. Parties

Plaintiff Tonya Loomis is a 43 year-old woman. Doc. #29-11. On August 1, 2012, Loomis was hired by Defendant Starkville Mississippi Public School District to work as an Assistant Principal at its Sudduth Elementary School. *Id.* When she was hired, the District was run by Superintendent Lewis Holloway. Doc. #29-3.

### B. Assistant Principal Salaries in the District

At the time Holloway was hired, he noticed that some employees had "pretty high" salaries. Doc. #29-2 at 33. Holloway explained that while he chose not to lower previously set salaries, he developed "a plan that, as people c[a]me in, [he would] try and make [pay] fair and equitable." *Id.* at 36.

Under Holloway's plan, salaries for new assistant principals are calculated by a loose mathematical formula "based on a daily rate times the number of days worked plus a responsibility factor [dependent on] whether [the assistant principal works at the] elementary, middle school or high school." Doc. #29-2 at 36. The District derives the daily rate from its teacher pay scale, which is calculated based on education and experience, but is generally approximately $1,700 above the state rate.[1] *Id*. at 28. As for number of days worked, administrators in the District, including assistant principals, are employed under 10-month (200-day), 11-month (220-day), or 12-month (240-day) contracts. *See* Doc. #35-3 at 1; Doc. #29-1 at 36. Finally, the responsibility factor is a set percentage – approximately 10% for elementary school assistant principals; 15% for middle school assistant principals; and 20% for high school assistant principals. Doc. #29-2 at 38, 59–60. Holloway uses this formula for calculating salaries and raises "to get at a ballpark" figure, but maintains discretion to adjust the number. *Id*. at 37–38. For assistant principals hired before Holloway's tenure, salaries remained untouched until the new formula called for a raise. *Id*. at 39.

Holloway explained that the markets for principals and assistant principals differ in that if he "need[s] to hire a high school principal, and I go out and find the best one I can, … I've got to pay enough money to attract that person to come to Starkville …. It's a negotiated salary …. On assistant principal salary, most of the time they're people from within. It's a training job … and it's not a market-based economy." Doc. #29-2 at 33–34.

### C. Loomis' First Contract

Loomis' first employment contract with the District provided for a 182-day employment term from August 20, 2012, through June 6, 2013, at an annual salary of $48,348.30. Doc. #29-

---

[1] Unlike teachers, assistant principals are not entitled to state-mandated step increases. Doc. #29-2 at 39–40.

3.  The contract was signed by Holloway on August 22, 2012; and by Loomis on September 6, 2012.  *Id*.  Holloway elaborated that, because Loomis "came in after the school year had already started[, w]e went to the teacher salary [and] divided that … to get a daily rate, and we multiplied the daily rate times the number of days she was going to be working, which was 182 [and then] added [a 10][2] percent responsibility factor for her assistant principal's duties."  Doc. #29-2 at 27–28 (footnote added).

### D.  Loomis' Revised 2012-2013 Contract

Shortly after the signing of Loomis' initial contract, Loomis and the District executed a revised employment contract which called for a 200-day[3] employment term at an annual salary of $53,129.41.  Doc. #29-4.  Under this revised contract, Loomis' employment term ran from August 20, 2012, through June 30, 2013.  *Id*.  The contract reflected a "Certification Level" of "AA" and "10-0" years of experience, and was signed by Holloway on September 18, 2012, and by Loomis on September 24, 2012.  *Id*.  According to Holloway, the District elected to "extend her contract to 200 days, and she would come in during the summer to work her 200 days, so she'd get a full contract ….  It was to help Ms. Loomis."  Doc. #29-2 at 43.

On July 13, 2012, a little over a month before Holloway signed Loomis' first contract with the District, the District entered into an employment contract with Ra'mon Forbes for Forbes to serve as an assistant principal at the District's Armstrong Middle School.  *See* Doc. #29-5.  Forbes' contract called for a 220-day employment period and annual salary of $49,576,

---

[2] Holloway initially testified that the responsibility bonus for elementary school was 5%, but later clarified that the number was approximately 10.9%.  Doc. #29-2 at 59.

[3] Holloway testified that he selected a 200-day contract because he was "concerned that there was not enough work in the elementary school to warrant the 220."  Doc. #29-2 at 33.  Loomis testified that, at the time, she was excited about the 200-day contract because she would "get to be with [her] kids."  Doc. #29-1 at 36.

and reflected a certification level of "AA" and "4-4" years of experience. *Id*. Holloway signed the contract on behalf of the District on July 2, 2012. *Id*.

### E. Loomis' Initial Salary Complaints and 2013–2014 Contracts

In March 2013, during the term of her revised contract, Loomis approached Holloway and asked why she "was making less than James Gassaway (a male) even though [she] had six years of administrative experience while James Gassaway had less." Doc. #35-1 at ¶ 2. Holloway responded "that administrative experience was no more significant tha[n] regular teaching experience." *Id*. When Loomis "pointed out that Gassaway had only 9 years of teaching experience compared to [her] 15 years total experience[,] … Holloway said he would get back to [her]." *Id*.

Sometime between March and June 2013, Loomis was presented with a 200-day contract to serve as an assistant principal at Sudduth for an employment term of July 25, 2013, through June 5, 2014. Doc. #29-7. The document called for an annual salary of $53,129, and reflected that Loomis had "10-0" years of experience. *Id*. Regarding this proposed contract, Loomis asked Holloway why her annual salary had been reduced by 41 cents and why she "was making less than Gassaway and not much more than Forbes despite having significantly more administrative and total experience." Doc. #35-1 at ¶ 4. Holloway "said he would get back to [Loomis] about [her] concerns and request for a raise." *Id*. Holloway eventually signed the contract on June 12, 2013, and Loomis signed five days later. Doc. #29-7. Loomis signed "with the expectation that [the contract] might be changed in the future." Doc. #35-1 at ¶ 4.

At some point later, Loomis was presented with a revised 2013–2014 contract. Doc. #29-8. This revised contract called for the same employment term but rounded Loomis' annual

salary up to $53,130, and reflected that Loomis had "16-1" years of experience.  *Id*.  Loomis refused to sign the contract.  Doc. #35-1 at ¶ 5.

### F.  2013 Reassignments

Sometime before the 2013-2014 school year,[4] the District reassigned:  (1) Tim Bourne, an African American male principal, from Sudduth to Armstrong; (2) Elizabeth Mosely, a white female principal, from Armstrong to Sudduth; (3) Forbes, a male African American assistant principal, from Armstrong to Sudduth; and (4) Gassaway, a white male assistant principal, from Sudduth to Armstrong.  Doc. #39-3 at ¶¶ 3–4.  According to the affidavits of Assistant Superintendents Jody Woodrum and Toriano Holloway, the transfers of Bourne and Mosely "created a racial imbalance in both schools in terms of the principals and assistants employed at these schools.  To address that racial imbalance, the administration … reassigned … Forbes  … and … Gas[s]away …."  *Id*. at ¶ 4; Doc. #39-4 at ¶ 4.

Woodrum and Toriano[5] also aver that "[p]rior to the decision to reassign … Forbes … and … Gas[s]away[,] … the School District administration had decided to make no change in the salaries of any assistant principal within the School District.  However, to accommodate … Forbes and … Gas[s]away for the reassignment[,] … it was decided to give both of these assistant principals a 5% pay increase."  Doc. #39-4 at ¶ 5; Doc. #39-3 at ¶ 5.  Holloway, for his part, explained that he wanted to give the raises to Gassaway and Forbes because "I was moving

---

[4] The affidavits of Assistant Superintendents Toriano Holloway and Jody Woodrum state that the transfers occurred "[f]ollowing the school year 2013–2014."  Doc. #39-3 at ¶ 2; Doc. #39-4 at ¶ 2.  However, both parties' briefs state that the transfers occurred *before* the 2013–2014 school year.  *See* Doc. #30 at 4; Doc. #36 at 5.  This assertion is supported by Loomis' affidavit, Doc. #35-1 at ¶¶ 6–13; and elsewhere in the Toriano and Woodrum affidavits, Doc. #39-3 at ¶ 5, Doc. #39-4 at ¶ 5.  Accordingly, for the purpose of resolving the motion for summary judgment, the Court concludes that the transfers occurred before the 2013–2014 school year.

[5] To avoid confusion, because Superintend Holloway and Toriano Holloway have the same last name, Toriano Holloway will be referred to in this opinion by just his first name.

people from a position that they were comfortable with and actually forcing them into a new position [a]nd I felt they deserved some compensation for that."  Doc. #39-1 at 53–54.

Loomis submitted an affidavit stating that sometime after March 2013, she learned that Gassaway "had approached Lisa Thompson ([then] principal of Sudduth Elementary …) about asking Elizabeth Mosely … if he could move to Armstrong Elementary."  Doc. #35-1 at ¶ 3. However, both Woodrum and Toriano deny knowledge of such a request.  Doc. #39-3 at ¶ 6; Doc. #39-4 at ¶ 6.

### G.  Forbes and Gassaway Raises

In July of 2013, Loomis spoke with Forbes "about not receiving a raise and he encouraged me to go back to see Holloway, and said that he was going to go see Holloway about a raise himself (having already signed a contract earlier that did not contain an increase)."  Doc. #35-1 at ¶ 6; Doc. #35-2 at 2.

On August 14, 2013, Holloway signed employment contracts for Forbes and Gassaway for the 2013–2014 school year.  Doc. #35-4; Doc. #35-5.  Both contracts called for 220-day terms, to run from July 11, 2013, through June 19, 2014; and provided for an annual salary of $52,054 for Forbes and $63,945 for Gassaway.  Doc. #35-4; Doc. #35-5.  On August 16, 2013, Forbes and Gassaway signed their contracts.  *See* Doc. #35-4; Doc. #35-5.  Neither Sean McDonnall, a male assistant principal at Starkville High School, nor Watress Harris, a male assistant principal at Armstrong Middle School, received raises for the 2013–2014 school year. *See* Doc. #29-6.

### H.  Loomis' August 2013 Meetings

On August 19, 2013, Loomis again went to speak with Holloway about her compensation for the 2013-2014 term.  Doc. #35-1 at ¶ 7.  At the meeting, Loomis "asked for an explanation of

why [she] wasn't given a raise and also why the other male assistant principals with less experience than [she] had were either making close to what [she] was making or were making more." *Id*. Holloway responded that the reason "for the disparity was a 'formula.'" *Id*.

Also during the meeting, Loomis was offered two additional contracts. *Id*. One reflected an annual salary of $53,129.41. *Id*. The other provided an increase in salary of $770.00, but increased the employment term from 200 days to 220 days. *Id*. at ¶ 8. Loomis refused to sign both documents. *Id*. at ¶¶ 7–8. Regarding the 220-day contract, Loomis explained that she refused to sign it because the proposed change "effectively decreas[ed her] per diem salary by almost eight per cent which [she] viewed as punishment for complaining about the disparity in [her] compensation and that of the male assistant principals." *Id*. After the August 19 meeting, Loomis called the District's Human Resources Department and was told that Holloway had added the twenty-day term to the 220-day contract. Doc. #35-1 at ¶ 9.

At Loomis' request, Holloway, Loomis, and Woodrum met on August 29, 2013, to discuss Loomis' salary. *Id*. at ¶ 10. According to Loomis, at the meeting she repeated her requests for equal treatment to the male assistant principals, but Holloway insisted that the revised 220-day contract would control her employment. *Id*. at ¶¶ 11–12. Loomis also claims that Holloway initially informed her that the raises of Forbes and Galloway were "because of increased duties," but later, after Loomis pointed out that she and Forbes were employed at the same school, Holloway claimed the raises were due to the transfers. *Id*. at ¶ 13. During this meeting, both Holloway and Woodrum suggested to Loomis that her job was in jeopardy and, "Holloway began to yell at [Loomis] in a threatening and intimidating manner." *Id*. at ¶¶ 12, 14. After being threatened, Loomis "thanked [Holloway] and Woodrum for their time and left the meeting." *Id*. at ¶ 14.

### I.    District's Explanation for the 220-Day Contract Offer

According to the District, sometime after the August 29 meeting, the District discovered that the 220-day contract offered to Loomis was created in error by the District's newly hired Human Resource Director Elsie Hopkins.  *See* Doc. #39-5.  According to Hopkins, she was hired on July 16, 2013, and "shortly after" her hire, she noticed that Loomis was the only assistant principal on a 200-day contract.  *Id*. at ¶ 2.  Without direction from Holloway "or any of the other administrative staff," Hopkins "prepared a 220 day contract for [Loomis] using the formula [she] understood to be in place for newly hired assistant principals."  *Id*. at ¶¶ 2–3.  In addition to improperly using a 220-day employment term, Hopkins failed to add a responsibility factor to Loomis' contract.  *Id*. at ¶ 4.

### J.    Loomis' Basis for Retaliation

After the August 29 meeting, Loomis requested 45 minutes per week "to advance [her] education."  Doc. #35-1 at ¶ 15.  Holloway told Loomis' supervisor "that if she could afford to let [Loomis] leave then she probably didn't need … two assistant principals."  *Id*.  Loomis believes that Holloway's statement was "a thinly veiled threat that if [she] persisted [her] contract would not be renewed."  *Id*.  Loomis avers that she is aware "of two other employees who were allowed substantially more leave than 45 minutes per week and there is no other reason for the disparity in this treatment than retaliation against me for complaining about disparate treatment of female and male administrators."  *Id*.

Holloway testified that he was unaware of any administrators who took leave for educational purposes.  Doc. #29-2 at 41.  He explained that he denied Loomis' request because "[t]here's 1100 students in that school.  I have no way to fill in for an assistant principal when they're away from campus.  I just didn't think it was appropriate."  *Id*. at 42.

Loomis also alleges that Holloway "singled [her] out for intimidation by attending a cohort[6] presentation [of hers] … in which his demeanor was so threatening as to cause comment by others who were present." Doc. #35-1 at ¶ 16 (footnote added). According to Loomis, Holloway did not attend any other cohort presentations. *Id.* Holloway could not recall sitting in on Loomis' presentation, but remembered sitting in on a presentation made by Forbes, someone named Stegall, and at least one more. Doc. #29-2 at 57–58.

## K. EEOC Charge and Administrative Resolution

On October 23, 2013, Loomis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. #29-11. Loomis' charge alleged discrimination based on sex, retaliation, and "Equal Pay." *Id.* In particular, Loomis alleged:

> I was hired on August 1, 2012, as an Assistant Principal at Sudduth Elementary School. On June 18, 2013, I was denied a raise in salary while two less qualified male assistant principals were given raises in salary. On August 29, 2013, I was retaliated against for making a complaint about disparate treatment based on my gender (female) from Lewis Holloway (Male) Superintendent. His attitude and statements to me prior to a meeting created a hostile work environment.

> Mr. Holloway became verbally abusive and presented me with another contract. He screamed at me and told me I could either accept the new contract, refuse to sign it in which case he would simply deduct $4,900 from my pay, or that I could just quit.

> I believe that I am being discriminated against because of my gender (female) and in retaliation for complaining about an unlawful employment act in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964, as amended since:

> I have 11 1/2 years of public education, 4 years of private education, and 5 1/2 years in administration [and] 6 years teaching in public schools.

> Two less qualified males (Jim Gassaway has 7-8 years in education, 3 years in administration) and Ramon Forbes has 5 years in education and 1 year in

---

[6] The cohorts are "presentations" designed "to develop leaders in the school district to become building principals." Doc. #29-2 at 56.

administration) holding the same position that I hold (Assistant Principal) were given raises.

Doc. #29-11. The charge alleged that the discrimination took place between June 18, 2013, and August 29, 2013. *Id.*

### L. Administrative Investigation and District's Salary Chart

During the EEOC's investigation, the District produced a document titled, "Position of Starkville School District." Doc. #35-2. Of relevance here, in its position statement, the District stated that: (1) during the August 29 meeting, Holloway "explained the reasons for the proposed change [to 220 days] but [Loomis] did not accept his explanation and continued to argue her position;" and (2) Forbes and Gassaway received their 2013–2014 raises "because they changed schools and their job responsibilities changed." *Id.* at 2.

Additionally, in response to a "Request for Information" by the EEOC, the District supplied a document purporting to be "an analysis of the Starkville School District's administrative salaries by experience, degree, responsibility and days worked." Doc. #35-2 at 3. Sometime later, the District created a revised version of the same chart. *See* Doc. #35-9.

Although the charts purport to report the same information (administrative salaries for the 2013–2014 school year), the numbers for Lynn Arsenault, an assistant principal, and Principal Lisa Thompson differ. Specifically, Arsenault's: (1) salary changed from $69,300 in the first version to $63,525 in the second; (2) daily rate changed from $370.59 in the first version to $339.71 in the second; (3) "Days Supp" changed from $26,691.41 in the first version to $19,897.29 in the second; (4) responsibility factor changed from -16.07% in the first version, to -16.20% in the second; (5) "Resp Supp" changed from -$11,229 in the first version to -$10,210 in the second; and (6) total salary changed from $69,300 in the first version to $63,525 in the second. *See* Doc. #35-3; Doc. #35-9. Regarding Thompson, the differences in the charts are that

Thompson's (1) salary changed from $72,660 in the first version to $76,923 in the second; (2) responsibility factor changed from 6.31% in the first version to 10.77% in the second; (5) "Resp Supp" changed from $4,586 in the first version to $8,219 in the second; and (6) total salary changed from $72,660 in the first version to $76,293 in the second. *See* Doc. #35-3l; Doc. #35-9. No explanation for these changes has been offered by the District.

**M. This Action**

On June 19, 2014, Loomis received from the United States Department of Justice a "Notice of Right to Sue within 90 Days" letter.[7] Doc. #1 at Ex. B. Loomis filed this action on September 8, 2014. Doc. #1.

Loomis' complaint does not set forth specific counts; however, it invokes Title VII and references sexual discrimination and retaliation. *Id.* at ¶¶ 7–12. Specifically, the complaint alleges that: (1) Loomis "received a lower pay increase than male assistant principals similarly situated who had less administrative and overall experience;" (2) Loomis complained about the lower pay increase; (3) in retaliation for complaining, "Defendant … presented the Plaintiff with a revised contract which effectively lowered the Plaintiff's compensation for the 2013–2014 school year;" (4) also in retaliation for the complaint, Holloway "verbally abused the Plaintiff and suggested that if she didn't accept the retaliatory contract she could either resign or he would adjust the compensation under the original contract to reduce it to an amount equal to the proffered contract;" and (5) "Holloway has continued to intimidate the Plaintiff, singling her out from her peers and intimating that she is being reviewed for poor performance, which has placed the Plaintiff in a false light and caused her additional mental anguish and emotional distress." *Id.*

---

[7] The Notice was issued at Loomis' request and is "not … taken to mean that the Department of Justice has made a judgment as to whether or not [the] case is meritorious." Doc. #1 at Ex. B.

On July 22, 2015, the District filed a motion for summary judgment. Doc. #29. After requesting and receiving an extension to respond to the summary judgment motion, Loomis responded in opposition on August 12, 2015. Doc. #33; Doc. #34; Doc. #35. After requesting and receiving an extension to reply, the District replied on August 25, 2015. Doc. #37; Doc. #38; Doc. #39.

### III
### Evidentiary Matters

As cited above, Loomis, in opposition to the District's motion for summary judgment, submitted an affidavit describing, among other things, certain conversations between the District's employees. *See* Doc. #35-1. In its reply, the District objects to certain portions of the affidavit on hearsay and "falsity" grounds. *See* Doc. #39 at 5–7. The District also objects to consideration of the salary charts produced by the District on the grounds that the charts are "evidence of nothing as it relates to either how the plaintiff's salary was calculated or how the salary of any other assistant principal had been calculated." *Id*. at 9.

As an initial matter, in seeking to prove the "false" nature of Loomis' affidavit testimony, the District cites to the affidavits and deposition testimony of its own witnesses. *See id*. What the District does not cite, however, is any authority for the novel proposition that a party may render an opposing party's affidavit inadmissible by only submitting competing testimonial or affidavit evidence. In the absence of such authority, the District's "falsity" objections are overruled.

Next, the Court has not relied on either of the District's salary charts in resolving this motion for summary judgment. Accordingly, for purposes of this opinion, the District's objection to consideration of the charts is overruled as moot.

Turning to the hearsay objections, the District objects to Loomis' affidavit averring to: (1) the fact that Gassaway asked Moseley if he could transfer to Armstrong Middle School; (2) a conversation between Loomis and Forbes during which Forbes said he planned on asking Holloway for a raise; (3) a conversation between Loomis and the District's Human Resources Department during which an unknown employee told Loomis that Holloway had added the twenty days to the erroneous 220-day contract; and (4) the fact that Holloway told Loomis' principal that if the principal could afford to let Loomis leave for 45 minutes per week, then the principal probably did not need two assistants. In its objections, the District cites no authority and, in the rare instances when a semblance of argument is made, displays a fundamental misunderstanding of the hearsay rule.

Under Rule 801 of the Federal Rules of Evidence, hearsay is defined as a "statement that … the declarant does not make while testifying at the current trial or hearing [and] a party offers in evidence to prove the truth of the matter asserted in the statement."[8] Once a party has "properly objected to [evidence] as inadmissible hearsay," the burden shifts to the proponent of the evidence to show, "by a preponderance of the evidence, that the evidence [falls] within an exclusion or exception to the hearsay rule and was therefore admissible." *Sowders v. TIC United Corp.*, No. SA-05-CA-309, 2007 WL 3171797, at *1 (W.D. Tex. 2007) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). Accordingly, to shift the burden to Loomis, the District is required to offer a "proper" hearsay objection.

Where a hearsay objection is "conclusory and scant at best," such objection is not properly made and should be summarily overruled. *See Thomas v. Kent*, No. Civ. A. 06-1078,

---

[8] The District contends that the "definition of inadmissible hearsay" is Loomis' repetition of "an alleged statement to this Court that she did not hear." Doc. #39 at 7.

2009 WL 2019878, at *1 n.2 (W.D. La. July 8, 2009); *see also United States v. Nieto*, 226 Fed. App'x 483, 489–90 (6th Cir. 2007).  The necessity of proper argument is particularly important where "the Court questions whether the [statements] are being offered for the truth of the matter asserted and/or whether they" fall within an exception to the hearsay rule.  *Kent*, 2009 WL 2019878, at *1 n.2.

Here, the District has wholly failed to offer any legal argument for its hearsay objections. Furthermore, the Court questions whether:  (1) the conversation between Gassaway and Moseley is being offered for the truth of the matter asserted and/or fits within the party-opponent exclusion to the hearsay rule, *see* Fed. R. Evid. 801(d)(2)(D); (2) the conversation between Loomis and Forbes fits within the then-exiting state of mind exception to the hearsay rule, *see* Fed. R. Evid. 803(3); (3) the conversation between Loomis and Human Resources fits within the party-opponent exclusion to the hearsay rule; and (4) the conversation between Moseley and Loomis' principal is being offered for the truth of the matter asserted and/or fits within the party-opponent exclusion to the hearsay rule.  Thus, in light of the District's cursory briefing, the Court deems the hearsay objections waived and overrules the same for the purpose of deciding the motion for summary judgment.

Although the District's hearsay objections have been deemed waived, the Court elects to raise one evidentiary issue sua sponte.  Pursuant to Rule 56(c)(4), "[a]n affidavit … used to … oppose a motion [for summary judgment] must be made on personal knowledge."  When considering a motion for summary judgment, a court may sua sponte decline to consider evidence which does not comply with Rule 56(c)(4).  *See Stamm v. TigerTech Inv., Inc.*, No. 1:11-cv-1686, 2013 WL 1093033, at *1 n.2 (S.D. Ind. Mar. 15, 2013).

In paragraph three of her affidavit, Loomis alleges that she "learned" of the discussion between Gassaway and Thompson. Doc. #35-1 at ¶ 3. Loomis does not, however, aver as to the source of her knowledge.

An affidavit stating that a fact was "learned" is not based on personal knowledge and should not be considered at the summary judgment stage. *Gibson v. Liberty Mut. Grp.*, 129 Fed. App'x 94, 95 (5th Cir. 2005) (district court "properly struck" portion of affidavit stating affiant "learned that" a conversation occurred); *see also Rabin v. Provident Life & Acc. Ins. Co.*, No. 98-c-1577, 2000 WL 1131944, at *7 (N.D. Ill. Aug. 9, 2000) ("In her affidavit, Rabin has not shown personal knowledge because there is no foundation for her general assertions that she 'learned' certain things."). Accordingly, the Court concludes that paragraph 3 of Loomis' affidavit is not supported by personal knowledge and will not, therefore, be considered in deciding the instant motion for summary judgment.

## IV
## Analysis

"Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment." *Fitzgerald v. Sec'y, U.S. Dep't of Veteran Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). The law also prohibits retaliation against any employee or applicant for employment because such person "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

To establish a claim under Title VII, a plaintiff "can prove discrimination through direct or circumstantial evidence." *Davis v. Miss. Transp. Comm'n*, 618 F.Supp.2d 559, 561 (S.D.

Miss. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). Here, Loomis seeks to prove her case by relying on circumstantial evidence. *See* Doc. #36 at 12.

Generally, Title VII sex discrimination and retaliation claims based on circumstantial evidence are analyzed under the *McDonnell-Douglas* burden-shifting framework. *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001) (retaliation case); *see also Moore v. Miss. Dept. of Human Servs.*, 6 F.Supp.3d 713, 715 (S.D. Miss. 2014) (sex discrimination). Under *McDonnell-Douglas*, a plaintiff first must establish a prime facie case of discrimination. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate … non-[discriminatory] reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual [discriminatory] reason." *Id.* (internal citations omitted); *see also Rutherford v. Harris Cty.*, 197 F.3d 173, 179–80 (5th Cir. 1999).

## A. Relevant Conduct

Before considering the merits of Loomis' claims, the Court must first address an argument raised by the District in its reply, specifically:

> The plaintiff filed a detailed EEOC charge in October 23, 2013 alleging that she was discriminated against when two lessor [sic] qualified males, Jim Gasaway and Ramon Forbes, received raises while she did not. The plaintiff's complaint makes similar allegations. However, when confronted with a motion for summary judgment, the plaintiff seeks to expand her claims. Now, she submits alleged evidence indicating that female assistant principals generally receive less pay than their male counter-parts and she argues regarding "inconsistencies" in Lynn Arsenault's daily rates. This argument is clearly beyond the scope of the initial EEOC charge and the complaint filed in this matter. As such, the plaintiff's claim regarding gender discrimination should be strictly limited to her allegations as they relate to Ramon Forbes and Jim Gasaway.

Doc. #39 at 3 (internal citations omitted).

While less than clear, it appears the District contends that: (1) Loomis cannot claim discrimination based on her salary because her EEOC charge referred only to raises; and (2) Loomis cannot claim discrimination based on "inconsistencies" in Arsenault's daily rates.

"The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dept. of Criminal Justice*, 220 F.3d 389, at 394–95 (5th Cir. 2000) (citation omitted). Under this standard, a Title VII action "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (citation omitted). To make this determination, a court must "engage in a fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citation omitted).

Of course, because the content of the EEOC charge only sets forth the maximum scope of a Title VII complaint, a plaintiff can waive or abandon properly charged claims of discrimination by failing to plead such claims in her complaint. *See Koger v. Texaco, Inc.*, No. 4:04-cv-205, 2007 WL 951752, at *7 (N.D. Ga. Mar. 28, 2007) ("[A] plaintiff's complaint is limited by her EEOC charge, but not expanded."); *see also Johnson v. Unilever Home & Personal Care, USA*, No. 4:02-cv-627, 2003 WL 21911075, at *3 (E.D. Mo. July 30, 2003) ("Johnson also alleged that Unilever retaliated against him in his EEOC charge, but the Court finds no reference to a retaliation cause of action in his complaint."); *see generally Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised

only in response to a motion for summary judgment is not properly before the Court.").  Thus, for a Title VII claim to be properly before the Court, such claim must be within the scope of the EEOC charge, and must be raised by the complaint.

As a threshold matter, absolutely nothing in the EEOC charge, Loomis' complaint, or the response to the motion for summary judgment suggests that Loomis is attempting to assert a claim based on discrepancies in Arsenault's salary.  Rather, it appears that Loomis is attempting to use Arsenault's salary to support a pay discrimination claim based on Loomis' salary.  While the value of such "anecdotal" evidence is limited, there is no per se prohibition against its introduction.  *See Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-cv-129, 2015 WL 631512, at *2 (N.D. Miss. Feb. 13, 2015).  Under this authority, the District's contention that Loomis is basing a claim on Arsenault's salary is without merit.

Regarding the claims based on salary discrimination, the District argues in its reply that Loomis cannot assert a pay discrimination claim based on salaries (rather than the 2013 pay raises) because such a claim was not raised in the EEOC charge or pled in Loomis' complaint. Doc. #36 at 2.  Loomis did not seek leave to file a sur-reply to the motion for summary judgment and thus has not addressed this argument.

First, the Court has no trouble concluding that a claim of salary discrimination based on gender is sufficiently related to a complaint about gender discrimination in the awarding of pay raises such that an investigation into the former could reasonably be expected to grow out of an investigation in the latter, particularly where, as here, the EEOC charge contains an explicit reference to "Equal Pay."  The question then becomes whether such a claim is contained in Loomis' complaint.

When considering whether a complaint has alleged a particular claim of discrimination, a Court must be cognizant of the fact that "[e]ven though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Thus, a discrimination claim will only be considered a part of a complaint if the allegations of the complaint provide "fair notice" of the claim. *Id.* In *Williams*, the Ninth Circuit held that complaints which included "specific references to pay" did not state a claim for compensation discrimination where the complaints did "not make any general or specific allegations of salary inequities apart from promotion-related differences." *Id.* at 1131.

Here, Loomis' complaint contains no reference to salaries apart from the allegations related to the allegedly discriminatory raises. Even when couched in these terms, the complaint does not refer to a difference in salary, only a difference in "pay increase." *See* Doc. #1 at ¶¶ 7–8. Under these circumstances, the Court concludes that Loomis' complaint does not provide "fair notice" to the District of a salary compensation claim apart from the specific decision related to discriminatory pay raises.[9] *See Williams*, 517 F.3d at 1130; *see also Coon v. Georgia Pacific Corp.,* 829 F.2d 1563, 1568 (11th Cir.1987) ("She [plaintiff] never moved to amend her complaint, and the inclusion of claims in the pre-trial stipulation, the mention of them in discovery and the filing of motions concerning those claims were not a substitute for the factual

---

[9] In reaching this conclusion, the Court notes that, while it appears that Plaintiff propounded at least one interrogatory request regarding assistant principal salaries, Doc. #39-2, there is no indication that the course of discovery provided the District with notice that Plaintiff intended to pursue a claim based on salary discrimination. Compare *Fietz v. Southland Nat. Ins. Corp.*, No. Civ. A. 05-64, 2007 WL 4353794, at *4 n.8 (W.D. La. Dec. 7, 2007) (claim raised for first time at summary judgment not before court where claim was not pled and was only identified on one page in a previous motion in limine) with *Johnson v. Potter*, 732 F.Supp.2d 1264, 1276 (M.D. Fla. 2010) (allowing for amendment of complaint to allow for unpled claims where the incidents underlying the claims were "explored … extensively in discovery" and where defendant "realized during discovery that [the plaintiff] planned to use the incidents as evidence of discrimination and retaliation").

allegations of a complaint under Federal Rule of Civil Procedure 8(a)").  As such, a salary compensation claim by Loomis is not properly before the Court.[10]

## B.  Discriminatory Grant of Pay Raises

Having found that Loomis' compensation claim is limited to the decision related to her pay increase, the Court will analyze such claim under the *McDonnell-Douglas* burden shifting framework.

### 1.  Prima Facie

To establish a prima facie case of discrimination based on a denial[11] of a raise, a plaintiff "must show that similarly situated employees who were not [in the protected class] received raises during the same period."  *Vital v. Nat'l Oilwell Varco*, No. H-12-1357, 2014 WL 4983485, at *20 (S.D. Tex. Sep. 30, 2014) (citing *Hart v. Life Care Ctr. of Plano*, 243 Fed. App'x 816 (5th Cir. 2007)); *see also Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1062 (5th Cir. 1998) (in age discrimination case, noting plaintiff "could have established a prima facie case … by showing that younger managers received raises and bonuses under circumstances 'nearly identical' to his").  Within the context of pay increases, a plaintiff "must show that [her] circumstances are nearly identical to those of a better-paid employee who is not a member of the protected class."  *Goring v. Bd. of Sup'rs of La. State Univ.*, 932 F.Supp.2d 642, 651 (M.D. La.

---

[10] The Fifth Circuit has held that when a response to a motion for summary judgment asserts a new claim, a district court should construe the response as a motion to amend the complaint.  *Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996).  However, the Local Rules of this Court provide that "[a] response to a motion may not include a counter-motion in the same document."  L.U. Civ. R. 7(b)(3).  Accordingly, even construing the raising of the new claim as a motion to amend, such motion must be denied as being in violation of this Court's Local Rules.  Even if the motion could be deemed properly before the Court, Loomis' response offers no justification for the grant of an amendment at such a late date in the litigation.  *See HEI Res., Inc. v. S. Lavon Evans, Jr. Operating Co., Inc.*, No. 5:09-cv-124, 2011 WL 1230338, at *9 (S.D. Tex. Mar. 29, 2011) (denying motion to amend "to include new claims [filed] almost two and a half weeks after the close of discovery and less than a month before the deadline for contested motions").

[11] As quoted above, Plaintiff's complaint alleges that she received a "lower" pay increase than similarly situated individuals.  Doc. #1 at ¶ 7.  However, it is undisputed that Plaintiff received *no* pay increase during the time period relevant to this suit.  Accordingly, the Court treats Plaintiff's claim as one for a denial of a pay increase.

2010) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)) (internal

quotation marks omitted). "[T]he job contents, not the job title classification or description,

determine whether the circumstances are nearly identical." *Id.* (citing *Montgomery v. Clayton

Homes, Inc.*, 65 Fed. App'x 508, at *2 (5th Cir. 2003)). In making this determination, courts

must be cautious to avoid using "the defendant's nondiscriminatory reason to assess whether the

plaintiff met [her] prima facie case." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662

(6th Cir. 2000) (citing *U.S. Postal Serv. Bd. of Governors v. Aiken*, 460 U.S. 711 (1983)); *see

generally Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988) ("Placing a

plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination

case is an unnecessary redundancy.").

In this case, it appears Loomis relies on Gassaway and Forbes as comparators. It is

undisputed that both Gassaway and Forbes are men who, like Loomis, serve as assistant

principals within the District. It is also undisputed that, unlike Loomis, both men received 5%

raises in pay and that, in particular, Forbes received the 5% increase as a part of his contract for

an assistant principal position at Sudduth Elementary – the same school and position as Loomis.

Under these circumstances, the Court concludes that there is at least a genuine issue of material

fact as to whether Loomis met her prima facie case by using Forbes as a comparator.[12]

## 2. Legitimate Non-Discriminatory Reason

After the plaintiff states a prima facie case of discrimination, the burden shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Aryain*,

534 F.3d at 484. At this stage, the defendant "need not persuade the Court." *Tex. Dep't of Cmty.*

---

[12] In reaching this conclusion, the Court declined to consider the transfers, which are offered as the District's legitimate nondiscriminatory reason for the raises, as grounds for disqualifying Forbes (or Gassaway) as comparators. *See Cline*, 206 F.3d 662.

*Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Rather, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id*. at 257. In this regard, the explanation "must be clear and reasonably specific." *Id*. at 258 (citations omitted).

The District has offered evidence, in the form of Holloway's deposition testimony and the affidavits of Holloway's assistant superintendents, that Forbes and Gassaway received raises as compensation for transfers from their previous schools. The Court concludes that this evidence would allow the trier of fact rationally to conclude that the denial of Loomis' pay raise was not motivated by discriminatory animus. Accordingly, assuming the genuine issues of material fact regarding Loomis' prima facie case resolve in Loomis' favor, the District has satisfied its burden under *McDonnell-Douglas* to proffer a legitimate, non-discriminatory reason for its pay raises decisions.

### 3. Pretext

"If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation omitted). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id*. (citations and internal quotation marks omitted). When considering pretext, the question "is not whether [the] proffered reason was an *incorrect* reason for … discharge [but] whether the evidence supports an inference that [the employer] intentionally discriminated against [the plaintiff], an inference that can be drawn if its proffered

reason was not the real reason for discharge." *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (emphasis in original).

In seeking to show pretext, Loomis advances five arguments: (1) as to Forbes and Gassaway, "[o]ne or the other of the two's duties were … decreased and should not have merited an increase in salary;"[13] (2) "[b]oth Gassaway and Forbes had already been transferred and were working under their previous compensation packages when Forbes approached Holloway to ask for a raise;" (3) Loomis "was being 'forced' into a new position by virtue of the fact that [Holloway] was replacing both her principal and the assistant principal she had worked with;" (4) "there is no evidence that Gassaway and Forbes were 'forced' to transfer;" and (5) the District's "alleged non-discriminatory basis for the disparity in compensation has evolved over time."[14] Doc. #36 at 7, 11. Except for the skeletal hearsay objections explained above, the District has wholly failed to address Loomis' pretext arguments.

### a. Post-Transfer Salaries and Duties

First, while less than clear, it appears Loomis argues that Forbes' transfer from Armstrong Middle School to Sudduth Elementary School carried with it a decrease in responsibility, which should have reduced Forbes' salary under the pay scale implemented by Holloway, and that the fact Forbes' salary did not decrease is evidence of pretext. Doc. #36 at 8. Although the lack of decrease in Forbes' salary is suspicious, and certainly calls into question the validity of Holloway's "responsibility factor" in calculating salaries, it is not evidence that the

---

[13] The Court presumes this argument ultimately applies only to Forbes because, under Holloway's formula, the responsibility factor is less at an elementary school than it is for a middle school.

[14] The pretext section of Loomis' response brief also refers to the salaries of various administrators as reported in the District's salary charts. Doc. #36 at 7–10. However, Loomis characterizes this argument as addressing "the issue of pretext in the context of the Defendant's alleged legitimate basis for the amount of compensation paid to the Plaintiff vs. her male counterparts." *Id.* at 10. Insofar as this claim is not properly before the Court, the Court declines to consider the charts as evidence of pretext.

particular challenged decision (the 5% pay *increase*) was instituted for any reason other than the District's proffered reason.

### b.  Timing of Raises

Next, Loomis contends that the timing of the Forbes and Gassaway contracts (both executed approximately a month into each employee's 2013–2014 term) is evidence of pretext because "[i]f the real reason for the raise was merely that they had been transferred, then they should have received their raises before the new school year began." Doc. #36 at 11.  Loomis also argues that the timing is suspicious insofar as the contracts were signed "after the Plaintiff had repeatedly asked for a raise." *Id*.  The Court agrees with Loomis.

As explained above, the 2013–2014 contracts for Forbes and Gassaway were signed by Holloway on August 14, 2013, more than a month after the July 11, 2013, start date of the employment terms provided for in the contracts.  In contrast, the 2013–2014 contracts for Assistant Principals McDonnall and Harris (the two male assistant principals mentioned above), which also included a July 11, 2013, start date, were signed by Holloway on June 12, 2013.  *See* Doc. #29-6.  Loomis' initial 2013–2014 contract, which called for a July 21, 2013, employment term, was also signed by Holloway on June 12, 2013.  Doc. #29-7.  The District has offered no reason for this discrepancy.  Under these circumstances, the Court concludes that the timing of the Forbes and Gassaway pay increases contribute to a finding of pretext.  *See Spears v. Patterson UTI Drilling Co.*, 337 Fed. App'x 416, 421 (5th Cir. 2009) ("[D]eparture from normal company procedure might contribute to a finding of pretext …").

### c.  Loomis' "New" Position

Third, Loomis argues that, by virtue of having new employees in her school, she was effectively transferred to a new position.  Doc. #36 at 11.  Loomis contends therefore that

Gassaway's decision not to grant her a raise is evidence that the raises were not due to transfers. *Id.*

During his deposition, Holloway testified that he did not grant Loomis a raise because, unlike Gassaway and Forbes, "her position was the same." Doc. #29-2 at 54. Loomis does not contend that her duties or position changed as a result of the transfers. Given this, the Court finds no evidence of pretext in Loomis' "new position" argument.

### d. Motivation for Transfers

Loomis argues that "there is no evidence that Gassaway and Forbes were 'forced' to transfer." Doc. #36 at 11. Rather, citing to her affidavit, Loomis argues that there is evidence that Gassaway "initiated the request for a transfer, which was initially denied." *Id.* at 12. However, for the evidentiary reasons above, the Court declines to consider the portion of Loomis' affidavit dealing with Gassaway's alleged request to transfer.

In support of its motion for summary judgment, the District introduced affidavits from two District assistant superintendents stating that the 2013 transfers occurred to create racial balance in the District, and testimony from Holloway that he "forced" the transferees into new positions, which evidence now stands undisputed. Accordingly, Loomis' argument that there is no evidence that Gassaway or Forbes were forced into their new positions is without merit.[15]

### e. Change in Proffered Legitimate Reason

Finally, Loomis contends that the District changed its proffered reasons for the Gassaway and Forbes raises and that such a change is indicative of pretext. Doc. #36 at 7. To this end,

---

[15] Loomis also argues that Lisa Thompson did not want to transfer schools but did not receive a raise as a result of her new assignment. Doc. #36 at 11. However, it is undisputed that Thompson is a principal and that the District uses different pay standards for principals than it does for assistant principals. *See Harkness*, 2015 WL 631512 at *2–3 (anecdotal or "me too" evidence of discrimination only relevant when "closely related … to the plaintiff's circumstances and theory of the case").

Loomis argues that the District "maintained that the reason for giving raises … was that they were transferred and this entailed a change in their job responsibilities [but that n]o explanation [was] given as to whether these job responsibilities were increased or decreased or even what they consisted of." *Id.* Loomis also points out that, at the August 19, 2013, meeting, Holloway attributed the raises to his "formula," rather than the transfers. *Id.* at 4.

"When an employer's proffered reasons … change over the course of the action [the changes] can be evidence of pretext." *Hoye v. Upshur Cty.*, No. 6:08-cv-391, 2009 WL 3817468, at *2 (E.D. Tex. Nov. 13, 2009) (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003). Thus, the question becomes whether the District's stated reason for the raises has changed over time.

Preliminarily, the Court finds no evidence of a change in position in Loomis' characterization of the August 19 meeting. Loomis avers that she asked about the raises *and* her total compensation, and Holloway responded that the "disparity" was based on a formula. *See* Doc. #35-1 at ¶ 7. Based on this description, it is clear that Holloway was referring to Loomis' salary, and not to the raises issued to Gassaway and Forbes. However, Loomis' affidavit avers that at the August 29 meeting ten days later, Holloway "said that Forbes and Galloway received raises because of increased duties …." Doc. #35-1 at ¶ 13. This statement clearly represents a change in the District's proffered reason for the raises.

Turning to the District's summary judgment documents, in its position statement to the EEOC, the District attributed the raises to the fact that Gassaway and Forbes "changed schools and their job responsibilities changed." Doc. #35-2 at 2. During this litigation (and through Holloway's testimony), the District has taken the position that the raises were given because Gassaway and Forbes had been "forc[ed]" into new positions. *See* Doc. #39-1 at 53–54; Doc.

#30 at 10. Put differently, while the transfers were always offered as justification for the raises, the *reason* the transfers justified the raises has changed from a modification in responsibility, to a forced change in setting. This distinction, explained by nothing in the summary judgment record, amounts to evidence of pretext.

### f.    Summary

In sum, Loomis has introduced evidence that the raises for Gassaway and Forbes were procedurally irregular and that the justification for the raises has been modified, if not outright changed. While it is a very close call, the Court concludes that Loomis has created a genuine issue of material fact as to whether the reason for the raise offered by Defendant – the forced transfer of Gassaway and Forbes – is pretext for unlawful discrimination. Accordingly, summary judgment on Loomis' claim for a discriminatory raise will be denied.

## C.    Retaliation

Having denied summary judgment on Loomis' claim for denial of a raise, the Court turns to the remaining claim of retaliation.

### 1.    Prima Facie

"To establish a prima facie case of retaliation, [a plaintiff] must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain*, 534 F.3d at 484 (citation omitted). The District disputes the point at which Loomis engaged in protected activity and argues that Loomis cannot establish the existence of an adverse employment action or the causal connection between such an action and her having participated in protected activity.

### a. Protected Activity

In its memorandum in support of summary judgment, the District "concedes that Loomis engaged in a protected activity when she filed her EEOC charge [but] denies that she formally engaged in any protected activity prior to her filing her EEOC complaint …." Doc. #30 at 12.

"An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (internal quotation marks and citation omitted). "An employee's internal informal complaints of unlawful employment practices are sufficient to invoke the protections of Title VII." *Lih v. Veneman*, No. 1:01-cv-471, 2004 WL 1778806, at *4 (N.D. Miss. June 23, 2004) (collecting cases). However, the complaint must have been based on a "reasonable good faith belief" that the conduct violated Title VII. *Williams v. Racetrac Petro., Inc.*, 824 F.Supp.2d 723, 728 (M.D. La. 2010) (citations omitted).

Here, the record shows that Loomis complained of disparate treatment in pay during the August 19, 2013, meeting. While these complaints were raised informally, the Court concludes that there is a genuine issue of material fact as to whether the complaints (which followed Loomis' realization that two male colleagues received raises) were based on a reasonable good faith belief that the District's conduct violated Title VII and that, therefore, such complaints qualify as protected activity.

### b. Adverse Action

Within the context of a Title VII retaliation claim, an adverse employment action is one that "a reasonable employee would have found [to be] materially adverse, which in this context

means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). "The standard is objective, but the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, __ F.3d __, 2015 WL 7273321, at *3 (5th Cir. Nov. 17, 2015) (internal quotation marks and citation omitted).

In her response to the motion for summary judgment, Loomis identified the following acts as adverse: (1) the offering of modified contracts during the August meetings; (2) the threats to Loomis' job during the August 29 meeting; (3) an undated denial of leave to attend a settlement conference in this matter; (4) the denial of leave to pursue an advanced degree; and (5) Holloway's attendance of Loomis' cohort meeting.[16] Doc. #36 at 7, 13. Loomis has offered no authority for her arguments.

As a preliminary matter, the law is clear that threats do not amount to adverse employment actions. *See Brandon v. Sage Corp.*, 61 F.Supp.3d 632, 649 (W.D. Tex. 2014) ("Although the Fifth Circuit has not ruled on whether threatened pay cuts can amount to materially adverse action in the retaliation context, the few courts addressing threats of pay cuts under the materially adverse standard have found that they do not constitute materially adverse employment action.") (collecting cases); *Brooks v. Houston Indep. Sch. Dist.*, 86 F.Supp.3d 577, 586 (S.D. Tex. 2015) ("Threats of retaliation that do not significantly alter conditions of employment are generally not enough for a *prima facie* Title VII case.") (collecting cases). Accordingly, neither the August 29 threats nor the revised contracts (which are best considered

_____

[16] Neither of the allegations related to denial of leave are alleged in Loomis' complaint. Nevertheless, unlike the claim for salary discrimination, the District has not objected to the Court's consideration of the allegations regarding denial of leave. Accordingly, the Court will consider the conduct for the purpose of deciding this motion for summary judgment.

threats of reduced compensation) may be considered adverse within the Title VII retaliatory framework.

Next, within the context of retaliation, "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general, because a reasonable employee would not have found the action to be materially adverse." *Ogden v. Potter*, 397 Fed. App'x 938, 939 (5th Cir. 2010) (citation omitted). Therefore, the single denial of leave for the purpose of attending the settlement conference was not materially adverse.

With regard to the leave to attend classes, the Court has found cases where denial of educational leave was found to be materially adverse where the denial either caused or could have caused detriment to the plaintiff. *Rougeau v. Louisiana Dep't of Soc. Servs.*, No. 04-432, 2008 WL 818961, at *4 (M.D. La. Mar. 25, 2008) (denial of educational leave adverse where plaintiff was forced to withdraw from graduate program); *Durkin v. Verizon New York, Inc.*, 678 F.Supp.2d 124, 138 (S.D.N.Y. 2009) (denial of educational leave adverse where denial could have led to reduction in salary). Loomis does not argue here that the educational opportunity could have resulted in a detriment but she contends that the denial was adverse because it was "the only way [she] could increase her compensation." Doc. #36 at 6–7. What Loomis does not do, however, is offer any evidence how the *particular* educational opportunity she sought would have contributed to an increase in compensation. Under these circumstances, the Court concludes that Loomis has failed to show that the denial of the educational leave was materially adverse.[17] *See Sebastian v. City of Chicago*, 2008 WL 2875255, at *27 (N.D. Ill. July 24, 2008)

---

[17] Even if the undated denial of the educational leave could be considered materially adverse so as to satisfy her prima facie case, Loomis has introduced no evidence or argument that the denial is causally linked to any of her protected activity. Furthermore, Loomis has offered nothing to rebut the testimony that Holloway denied such leave

("While the denial of an educational opportunity that would significantly contribute to an employee's professional advancement may, in some instances, fall into the category of materially adverse action, Sebastian fails to provide any details from which one could reasonably infer that [the denied leave] presented such an opportunity.") (internal citation omitted).

Finally, Loomis avers that "Holloway … singled [her] out for intimidation by attending a cohort presentation … in which his demeanor was so threatening as to cause comment by others who were present." Doc. #35-1 at ¶ 16. Absent evidence that Holloway's presence somehow impacted Loomis, such action does not amount to retaliation under Title VII. *See Grice v. FMC Techs. Inc.*, 216 Fed. App'x 401, 404, 407 (5th Cir. 2007) (no adverse action where supervisor "watched [plaintiff] more closely than others"). Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Loomis was subjected to an adverse employment action. Thus, summary judgment against her retaliation claim will be granted.

## V
## Conclusion

For the reasons above, the District's motion for summary judgment [29] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED as to Loomis' retaliation claim and is DENIED as to Loomis' claim for discrimination in the awarding of a pay raise.

SO ORDERED, this 15th day of December, 2015.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

because he could not find someone to cover for Loomis. While Loomis avers that she is aware of "two other employees," nothing in the record suggests that the circumstances of such leave are sufficiently similar to justify a finding of pretext. *See Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 Fed. App'x 363, 367 (5th Cir. 2014) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012)). Thus, summary judgment would also be appropriate on the grounds that Loomis has failed to satisfy the causation standard of her prima facie case and has failed to create a genuine issue of material fact as to whether the legitimate nondiscriminatory reason is pretext for discrimination.